UNITED STATES, PLAINTIFF *v.* ZIEGLER BOLT AND PARTS CO., DEFENDANT

Court No. 93–03–00162

(Dated January 13, 1995)

*Frank W. Hunger,* Assistant Attorney General of the United States; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *(Patricia L. Petty); Jeffrey Reim,* Office of Chief Counsel, United States Customs Service, of Counsel, for plaintiff.
*Day, Ketterer, Raley, Wright & Rybolt (Matthew Yackshaw),* for defendant.

## OPINION

CARMAN, *Judge:* Plaintiff commenced this action to recover civil penalties from defendant for violations of 19 U.S.C. § 1592 (1988) and to recover marking duties for violations of 19 U.S.C. § 1304 (1988). Plaintiff alleges defendant entered ninety-eight specifically identified entries of bolts and nuts or similar items from June 1983 to March 1988 by means of material and false acts, statements and/or omissions in violation of statutory and regulatory country of origin and marking require-

ments amounting to fraud.[1] Defendant moves for summary judgment and dismissal of the complaint. Plaintiff cross-moves for partial summary judgment on the issue of defendant's liability for committing fraud and seeks dismissal of defendant's affirmative defenses. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1582 (1988).

## BACKGROUND

Defendant, Ziegler Bolt and Parts Company, is an Ohio corporation apparently founded by William A. Ziegler, Sr. Defendant is a distributor of nuts, bolts, screws, fasteners and related products. As the three sons of Mr. Ziegler became adults, he apparently turned the day-to-day management and operation responsibilities over to them. Prior to 1983, defendant purchased its products directly from domestic manufacturers and import merchandise from other distributors of fasteners. Between June 1983 and March 1988, at the initiative of A. Paul Ziegler, one of the sons and a corporate officer, defendant direct-imported into the United States ninety-eight entries of metal fasteners.

As early as 1985, an inspection by the Florida Department of Transportation raised questions about the nuts and bolts the defendant supplied to Tri-State Culvert Corporation for use on federally-contracted highway projects. Apparently, a question was raised pertaining to the products because they appeared to be foreign-made. After several United States agencies made inquiries, A. Paul Ziegler admitted to the preparation of a false country of origin certification given to Tri-State and reissued to the Florida Department of Transportation. Ultimately, a criminal information was filed in the United States District Court of the Northern District of Ohio, Eastern Division, charging Ziegler Bolt and A. Paul Ziegler with one count of violating 19 U.S.C. § 1304(h) in connection with the importation of bolts into the United States.

Pursuant to a plea agreement, defendant was convicted of the offense of removing country of origin marks on bolts imported from outside the United States, and distributed in the United States in violation of 19 U.S.C. § 1304(h) (1988) and was fined $7,500. Pl.'s Opp'n App. at 7.[2]

On October 24, 1989, Customs issued defendant a prepenalty notice setting forth a monetary penalty up to $5,926,801 for violations of 19 U.S.C. §§ 1304, 1592. The prepenalty notice was accompanied by a five-page appraisal worksheet listing by entry number and date the various entries for which a penalty was sought. The prepenalty notice stated defendant had the right "to make a written and an oral presentation as

---

[1] The complaint in Count I alleges fraud in violation of 19 U.S.C. § 1592(c)(1) for a civil penalty in the amount of $5,926,801.00. Complaint ¶¶ 15–17. Count II alleges that one of the ninety-eight entries involved gross negligence rather than fraud, and seeks a civil penalty as to that entry, pursuant to 19 U.S.C. § 1592(c)(2) for $23,850.40. Id. ¶¶ 18–20. Count III alternatively alleges the same entry involved negligence and seeks a penalty of $11,925.20, pursuant to 19 U.S.C. § 1592(c)(3). Id. ¶¶ 21–23. Count IV alleges that marking duties in the sum of $412,913.00 were due, pursuant to 19 U.S.C. § 1592(d) and 19 U.S.C. § 1304. Id. ¶¶ 24–25. The total recovery sought is the sum of $6,375,489.60, plus interest and costs and attorneys' fees.

[2] Plaintiff's memorandum in support of its motion for partial summary judgment is abbreviated as "Pl.'s Br." and the appendix to the memorandum is noted as "Pl.'s App." Plaintiff's memorandum in opposition to defendant's motion for summary judgment is abbreviated as "Pl.'s Opp'n" and its appendix as "Pl.'s Opp'n App."

to why a claim for monetary penalty should not be issued," but that "[d]ue to the fact that the statute of limitations will expire, any presentation must be made within 7 days from the date of the mailing of this prepenalty notice." Pl.'s Opp'n App. at 24 (citing 19 C.F.R. §§ 162.77–.78).

On October 27, 1989, defendant's counsel sent a letter by certified mail return receipt requested to Customs protesting the proposed penalty and the shortened response time and requesting an extension of thirty days from the original due date "to submit a detailed written presentation in response to the penalty claim." *Id.* at 33–34. Defendant also requested an oral presentation to oppose the proposed monetary penalty. Although this letter was received by Customs on October 30, 1989, Customs sent a letter to defendant's counsel on November 9, 1989, indicating that "[n]o response has been received from [defendant] concerning the issuance of the Prepenalty Notice" and therefore Customs was issuing a Notice of Penalty in the amount of $5,926,801. *Id.* at 35. The letter also mentioned for the first time that "[a]dditionally, special marking duties are demanded in the amount of $412,913.20 pursuant to [19 U.S.C. § 1592(d)]." *Id.* The letter repeated defendant's rights to petition for relief, but stated "[d]ue to the fact that the statute of limitations will soon expire, your petition must be received in this office within 14 days of the date of this Notice." *Id.*

Defendant's counsel protested the issuance of the Notice of Penalty in a letter to Customs dated November 16, 1989. Counsel's letter described Customs Notice of Penalty as "clearly erroneous and wholly premature." Pl.'s Opp'n App. at 45. Defendant renewed its request for an extension of time to protest the prepenalty notice stating: "Ziegler Bolt has been reviewing its records to respond to the unwarranted claims. That review has not yet been completed * * * Ziegler Bolt has been diligently reviewing its records to prepare a response." *Id.* at 45–46. Defendant argued further in its letter that it would be premature to petition for relief from the Notice of Penalty because defendant "still has not had an opportunity to review and submit information in opposition to the proposed penalty." *Id.* at 46. The defendant requested an extension of thirty days from November 23, 1989, to submit its application to remit or mitigate the proposed penalty. Defendant also renewed its request for an oral presentation to oppose the proposed penalty. In a telephone conference on November 27, 1989, Customs and defendant agreed to a revised timetable permitting defendant to submit a petition protesting the proposed penalty by December 20, 1989. In a letter dated December 20, 1989, defendant submitted its petition in protest of the proposed penalty. The Customs Service granted defendant's request for an oral presentation and held a hearing on January 3, 1990.

On January 28, 1991, defendant received a letter from Customs denying defendant's protest in full and requesting penalty payment in the amount of $3,303,306 provided $412,918 was deposited as withheld duties. The denial letter required the penalty to be paid "within 7 days of

the date of this notification, if an acceptable two year waiver of the statute of limitations is not received within this time." *Id.* at 57. The letter warned that "[f]ailure to deposit the assessed penalty and duties or present a waiver of the statute will result in a referral of this matter for the institution of judicial enforcement proceedings." *Id.* Defendant retained the option, the letter concluded, of submitting a supplemental petition pursuant to 19 C.F.R. § 171.33 or a compromise offer to settle, but in any case, a deposit of the assessed penalties or a waiver was required to avoid a referral.

In a letter dated February 4, 1991, defendant submitted its supplemental petition for relief outlining several errors in both the Customs Service's decision and report sent to defendant with the January 28, 1991 letter from Customs. Because defendant accompanied neither its supplemental petition with a waiver of the statute of limitations nor paid the mitigated penalty and duties owed, Customs referred the supplemental petition to the Department of Justice. Plaintiff filed the complaint in this matter on March 15, 1993.

## CONTENTIONS OF THE PARTIES

In its papers, defendant raises five grounds upon which it argues summary judgment should be granted in its favor. First, defendant claims the statute of limitations to prosecute a civil penalty action has expired and thus plaintiff's claim is barred. Def's Br. at 19–23; Def's Opp'n at 11–17; Def's Reply at 1–8.[3] Second, defendant argues plaintiff cannot carry its burden of proof to show fraud with respect to each and every one of the ninety-eight specifically identified entries at issue. Def.'s Br. at 23–25; Def.'s Opp'n at 2–4, 6–7; Def.'s Reply at 8–12. Third, defendant claims Customs failed to follow the proper administrative process in these proceedings thereby denying defendant substantive and procedural due process of law. Def.'s Br. at 25–27; Def's Opp'n at 21–22; Def.'s Reply at 12–16. Fourth, defendant maintains the civil penalties sought expose defendant to double jeopardy in violation of the Fifth Amendment to the United States Constitution. Def.'s Br. at 27–30; Def.'s Opp'n at 18–21; Def.'s Reply at 16–20. Finally, defendant contends plaintiff's pursuit of civil penalties of over $6 million is an excessive fine under the Eighth Amendment to the United States Constitution and is therefore unlawful. Def's Br. at 30–31; Def.'s Opp'n at 21; Def.'s Reply at 20–21.

Plaintiff maintains it is entitled to partial summary judgment on the issue of defendant's liability under 19 U.S.C. § 1592 arguing the defendant is "bound by its admission of the facts which form the basis for its criminal conviction and is, therefore, collaterally estopped from denying a violation of 19 U.S.C. § 1592 in these proceedings." Pl.'s Br. at 6 (citing *United States v. Dantzler Lumber & Export Co.,* 16 CIT 1050, 1053–56, 810 F. Supp. 1277, 1281–82 (1992) and *United States v. Daewoo Int'l*

---

[3] Defendant's brief in support of its motion for summary judgment is abbreviated as "Def.'s Br."; defendant's brief in opposition to plaintiff's motion for summary judgment is abbreviated as "Def.'s Opp'n"; and defendant's reply brief in support of its motion for summary judgment is abbreviated as "Def.'s Reply."

*(America) Corp.,* 12 CIT 889, 892–902, 696 F. Supp. 1534, 1538–45, *vacated on other grounds,* 13 CIT 76, 704 F. Supp. 1067 (1988)). Plaintiff contests all affirmative defenses raised by defendant.

## DISCUSSION

A motion for summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." U.S. CIT R. 56(d). When appropriate, summary judgment is a favored procedural device to "secure the just, speedy and inexpensive determination" of an action. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986)). For the movant to prevail on a motion for summary judgment, the Court must find the evidence is such that a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Sweats Fashions,* 833 F.2d at 1562.

A. *Defendant's Motion for Summary Judgment:*

1. Statute of Limitations:

The first issue is whether the statute of limitations bars recovery of civil monetary penalties sought by plaintiff pursuant to 19 U.S.C. § 1592. Actions brought under § 1592 are subject to a five-year statute of limitations, as provided by statute:

> **§ 1621.  Limitation of actions.**
>
> No suit or action to recover any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered: *Provided,* That in the case of an alleged violation of section 1592 of this title arising out of gross negligence or negligence, such suit or action shall not be instituted more than five years after the date the alleged violation was committed * * *.

19 U.S.C. § 1621(1988). Courts have construed the first clause of § 1621 to embrace the "discovery rule" in fraud cases, which tolls the limitations period until the time the fraud is discovered. *See United States v. Modes, Inc.,* 16 CIT 879, 887, 804 F. Supp. 360, 368 (1992); *United States v. Thorson Chemical Corp.,* 16 CIT 441, 444, 795 F. Supp. 1190, 1192 (1992). Thus, "under the discovery rule the statute of limitations is tolled until the date when the plaintiff first learns of the fraud or is sufficiently on notice as to the possibility of fraud to discover its existence with the exercise of due diligence." *Modes,* 16 CIT at 887, 804 F. Supp at 368 (citing *United States v. R.I.T.A. Organics, Inc.,* 487 F. Supp. 75, 77 (N.D. Ill. 1980)).

There is dispute as to when the government discovered or should have discovered the fraud or possibility of fraud in this case. Defendant

claims the government adduced evidence about the alleged fraud "well in advance of five years prior to the filing of the complaint" and cites in support the investigations by an inspector for the Florida Department of Transportation, a congressional staff member, and the Federal Highway Administration. Def's Br. at 20–21. Defendant also refers to purported admissions made by a Customs special agent as to the expiration of the statute of limitations on some entries. *Id.* at 22. Taken together, defendant argues the government knew of the alleged fraud more than five years before Customs filed this action.[4]

Plaintiff argues defendant "incorrectly identifies the 'government officials' to which discovery of the fraud is to be attributed." Pl.'s Opp'n at 7. Because Customs is the primary enforcer of 19 U.S.C. § 1592(a), plaintiff contends, the statute of limitations should commence when *Customs* not any other agency discovers the alleged fraud. Pl.'s Opp'n at 7–9. Additionally, plaintiff asserts there is no indication that other government agencies had knowledge of the alleged fraud prior to March 15, 1988—that is, five years before the complaint in this action was filed. Pl.'s Opp'n Br. at 9–12.

Precedent informs this Court that "The question of when a plaintiff discovered or reasonably should have discovered a fraud is not one which often lends itself to resolution by way of summary judgment." *R.I.T.A. Organics,* 487 F. Supp. at 78 (citations omitted). The Court holds, there appear to be material questions of fact foreclosing summary judgment on the issue of the statute of limitations. The resolution of these factual disputes is better left for determination at trial. Summary judgment is denied.

### 2. Alleging Fraud with Particularity in the Complaint:

Defendant maintains the complaint "fails to state how or what Ziegler Bolt did with sufficient particularity to comply with CIT Rule 9(b)." Def's Reply at 12 (citing *United States v. Chow,* 17 CIT 1372, 1376 841 F. Supp. 1286, 1290 (1993)). Defendant claims the deposition testimony of the Customs investigator assigned to this case indicates the agent "does not have any evidence of fraud with respect to any of the 98 specific direct import entries except for possibly one or two which he could not specify or identify during the course of his deposition." Def.'s Br. at 24 (citing Guastini Deposition at 28, 101–04). In light of the dearth of evidence of fraud as to at least the other ninety-seven entries in this case, defendant contends summary judgment must be granted "because the government cannot prove an essential element of its case." Def's Reply at 9 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

Plaintiff contends first that "defendant is collaterally estopped from denying it fraudulently violated 19 U.S.C. § 1592 because of its prior criminal conviction of removing country of origin markings." Pl.'s

---

[4] Defendant maintains there is no need to examine whether the government should have discovered the alleged fraud before expiration of the statute of limitations because there is "clear, direct and undisputed evidence" that the government did, in fact, discover information about the alleged fraud more than five years before filing this action. Def.'s Reply at 7.

Opp'n at 12–13. Second, plaintiff argues the "defendant is confusing the production of evidence during pending discovery with the Government's burden of proof at trial." *Id.* at 14. Because § 1592 provides that "all issues including the amount of the penalty shall be tried *de novo,*" plaintiff asserts defendant's attack on the plaintiff's evidence is premature. *Id.* (citing 19 U.S.C. § 1592(e)(1)). Third, plaintiff's points to admissions made by the vice-president of Ziegler Bolt to a Customs Special Agent establishing that the fraudulent acts charged in the complaint "were knowingly, voluntarily and intentionally done." *Id.* at 16–17. Fourth, plaintiff maintains its complaint meets both the requirements of U.S. CIT R. 9(b) and comports with this Court's prior decisions, and therefore defendant's "argument that the complaint has 'failed to state all averments of fraud with particularity' should be rejected." *Id.* at 19 (citing Def.'s Br. at 24).

One of the primary objectives of U.S. CIT R. 9(b)[5] is to apprise the defendant of the claim against defendant, *United States v. F.A.G. Bearings Corp.,* 8 CIT 201, 206, 615 F. Supp. 562, 566 (1984) (quotations omitted), thereby assuring "that a defendant will be alerted to the particular transactions in question and be able to mount an effective and meaningful defense." *United States v. F.A.G. Bearings Corp.,* 7 CIT 8, 9 (1984). The Court notes plaintiff's complaint sets forth numerous false acts or omissions whereby defendant entered or introduced merchandise into the United States allegedly in violation of 19 U.S.C. § 1304. Complaint ¶ 7. For example, the complaint alleges

> (ii) defendant imported the merchandise with the intention of repackaging the merchandise and failed to advise Customs of this fact and/or file with Customs the repackaging certification required by 19 C.F.R. § 134.25 which notifies Customs that the import packaging will be changed; (iii) defendant removed the country of origin from imported fastener containers and relabeled the containers with the defendant's name and address only, and/or repackaged fasteners in containers labeled with the defendant's name and address only; * * * (v) defendant commingled domestic-made and foreign-made fasteners without labeling the new containers with the proper country of origin markings; * * *.

Complaint ¶ 7. The Court holds the complaint sets forth allegations of fraud with sufficient particularity both to satisfy U.S. CIT R. 9(b) and to give defendant notice of the claims asserted against it. The Court notes whether plaintiff is able to prove its case, of course, must await trial. The relief sought by defendant treated as an application to dismiss the complaint for failure to allege fraud with sufficient particularity is denied.

---

[5] The rule provides,

**RULE 9  Pleading Special Matters:**

\*      \*      \*      \*      \*      \*

(b) *Fraud, Mistake, Condition of the Mind.* In all averments of fraud or mistake, the *circumstances constituting fraud or mistake shall be stated with particularity.* Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

U.S. CIT R. 9(b) (emphasis added).

### 3. Substantive and Procedural Due Process:

In the administrative adjudication below, defendant claims Customs abrogated its right to due process and equal protection under the law in violation of the Fifth Amendment to the United States Constitution. Def.'s Br. at 15–19, 25–27; Def.'s Opp'n at 21–22; Def.'s Reply at 12–16. First, defendant contends Customs abused the administrative process by claiming the statute of limitations was due to expire, thereby unreasonably limiting the time in which defendant could respond to the prepenalty and penalty notices. If the statute of limitations was due to run within one year of the issuance of the prepenalty and penalty notices, then some of plaintiff's claims should now be barred, defendant argues. To allow plaintiff to assert the statute of limitations as a means of shortening the response time when the statute was not due to run within one year "blatantly violated and abused [defendant's] rights in a highly prejudicial manner." Def.'s Br. at 26. Second, defendant argues it received inadequate opportunity to participate at the administrative level because of the shortened response time. Third, defendant contends Customs failed to include a negligence or gross negligence claim in the prepenalty notice with respect to entry number 115–000504940, thereby preventing defendant from responding to those claims. Fourth, defendant claims Customs failed to include a request for special marking duties in its prepenalty notice thereby failing to give defendant proper notice of the alleged claims. Finally, because of these defects in the administrative process, defendant claims plaintiff has not exhausted its administrative remedies and therefore this action should be dismissed. *Id.* at 27 (citing *United States v. Stanley Works,* 17 CIT 1378, 849 F. Supp. 46 (1993) and *United States v. Chow,* 17 CIT 1372, 841 F. Supp. 1286 (1993)).

Plaintiff rejects the argument that defendant was not afforded an adequate opportunity to participate at the administrative level because of the shortened response time arguing the seven- and fourteen-day response times[6] were entirely proper under the applicable regulation. In the prepenalty notice, Customs invoked 19 C.F.R. § 162.78(a), which allows Customs to demand a shortened response time if less than one year remains before the statute of limitations may be asserted as a defense:

> **§ 162.78  Presentations responding to prepenalty notice.**
> (a) *Time within which to respond.* Unless a shorter period is specified in the prepenalty notice or an extension is given in accordance with paragraph (b) of this section, the named person shall have 30 days from the date of mailing of the prepenalty notice to make a written and an oral presentation. The district director may specify a shorter reasonable period of time, but not less than 7 days, if less

---

[6] In the prepenalty notice, Customs requested that defendant respond within seven days from the date of the notice given that the "statute of limitations will expire." Pl.'s Opp'n App. at 24. Similarly in the penalty notice, Customs required that defendant's petition be received "within 14 days of the date of this Notice" because the statute of limitations will soon expire. *Id. at* 35.

than 1 year remains before the statute of limitations may be asserted as a defense.

19 C.F.R. § 162.78(a) (1991). Similarly, the response time to file a protest of a penalty notice is generally 30 days,[7] but it may be shortened to no less than seven days if less than 180 days remain before the statute of limitations may be asserted as a defense. 19 C.F.R. § 171.12(e) (1991). Plaintiff argues the seven- and fourteen-day response times were proper under the regulations because "it is clear that the statute of limitations for some of the entries at issue would have expired within one year of the pre-penalty notice, and within 180 days of the penalty notice, for claims of gross negligence and negligence." Pl.'s Opp'n at 22 (footnote omitted). Plaintiff also distinguishes *United States v. Stanley Works,* 17 CIT 378, 849 F. Supp. 46 (1993) and *United States v. Chow,* 17 CIT 1372, 841 F. Supp. 1286 (1993) arguing those cases concerned prepenalty and penalty notices seeking penalties only for *fraudulent* violations of 19 U.S.C. § 1592 and not violations arising out of *negligence* or *gross negligence* as is the case here. Pl.'s Opp'n at 22–23 (citations omitted).

The Court holds defendant was afforded substantive and procedural due process at the administrative level. The Court notes that the plaintiff alleged fraud, gross negligence, and negligence in the complaint thereby distinguishing this case from *Chow* where the plaintiff did not allege gross negligence or negligence in its complaint, prepenalty notice, or penalty notice. *See Chow,* 17 CIT at 1374, 841 F. Supp. at 1288. It appears Customs gave defendant the opportunity to be heard. The Court notes that in a telephone conference on November 27, 1989, Customs and defendant agreed to a revised timetable permitting defendant to submit a petition protesting the proposed penalty by December 20, 1989. Defendant submitted its petition on that date. Customs then granted defendant's request for an oral presentation and held a hearing in full on January 3, 1990.

Furthermore, there does not appear to be any requirement in the regulations invoked by Customs requiring the agency to explain why it has specified a shortened response period during which a protest may be filed. It is clear that where less than one year in the case of a prepenalty notice, or 180 days in the case of penalty notice, remain before the statute of limitations may be asserted as a defense, Customs may specify a shorter response period, but not less than seven days. *See, e.g.,* 19 C.F.R. §§ 162.78(a), 171.12(e) (1991). Here it would appear that insofar as claims for gross negligence and negligence as to some of the entries are concerned, the statute of limitations could have been asserted as a defense within one year in the case of the prepenalty notice, and within 180 days in the case of the penalty notice. Customs was justified in accelerating the time period within which defendant could respond. The

---

[7] 19 C.F.R. § 171.12(b) (1991). This section was amended on September 4, 1992, increasing the allotted time for petitioners to respond to penalty notices to 60 days in certain cases. *See* T.D. 92–84, 26 Cust. Bull. 292 (1992).

Court denies defendant's motion for summary judgment to dismiss on the grounds that it has been denied substantive and procedural due process and grants plaintiff's motion for partial summary judgment to dismiss the affirmative defense of a denial of substantive and procedural due process of law.

### 4. Double Jeopardy:

Defendant's argument that this action exposes defendant to double jeopardy is based on the United States Supreme Court's unanimous holding in *United States v. Halper,* 490 U.S. 435 (1989). In *Halper,* the defendant, a manager of a medical laboratory that provided services to patients under the federal Medicare program, was convicted of violating the criminal false-claims statute by making misrepresentations as to the cost of medical services rendered resulting in overcharges of $585 to the federal government. 490 U.S. at 437. Subsequently, the government brought an action under the civil False Claims Act seeking a statutory penalty of up to $130,000. *Id.* at 438. The Court held "the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole." *Id.* at 451 (footnote omitted). In reaching its decision in *Halper,* the Court noted that the rule it adopted in the case was "for the rare case, * * * where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Id.* at 449.

Defendant argues Customs "did not suffer any damages" because defendant had paid all duties owed and therefore no remedial action is necessary. Def.'s Br. at 28. Defendant maintains, "[t]his is a classic case envisioned by the Court in *Halper* wherein the civil penalty is so extreme and so divorced from any damages suffered by the government as to constitute a prohibited second punishment for the same conduct." *Id.* at 28. Defendant urges the Court to reject the reasoning in two prior decisions of this Court considering double jeopardy arguments in the context of 19 U.S.C. § 1592, claiming the reasoning in those decisions is "inconsistent with proper double jeopardy analysis and finds no support in the *Halper* case * * * [and] is clearly at odds with proper double jeopardy analysis * * * ratified by the U.S. Supreme Court's decision in *Department of Revenue v. Kurth Ranch,* [114 S. Ct. 1937 (1994)]." *Id.* at 29 (citing *United States v. Dantzler Lumber & Export Co.,* 16 CIT 1050, 810 F. Supp. 1277 (1992) and *United States v. Valley Steel Prods. Co.,* 14 CIT 14, 729 F. Supp. 1356 (1990)).

Plaintiff maintains this action does not violate the Fifth Amendment double jeopardy clause. Pl.'s Opp'n at 28–32. Plaintiff distinguishes *Halper* from the present action and argues this Court has rejected similar double jeopardy arguments in *United States v. Dantzler Lumber & Export Co.,* 16 CIT 1050, 810 F. Supp. 1277 (1992) and *United States v. Valley Steel Prods. Co.,* 14 CIT 14, 729 F. Supp. 1356 (1990). The govern-

ment did suffer damages, plaintiff asserts, pointing to special marking duties claim in the complaint as well as other harms suffered by the government in international fraud cases. *Id.* at 30.

The Court is unconvinced by defendant's arguments. In *Valley Steel,* the Court carefully distinguished *Halper* explaining,

> Unlike the situation in *Halper,* the remedial formula authorized under 19 U.S.C. § 1592 does not fix a civil penalty; rather, it establishes the maximum penalty which is the domestic or dutiable value of the merchandise, and gives the Court discretionary authority to determine the size of such penalty. Therefore, the rule in *Halper* cannot serve as the basis for dismissing this action; the amount of civil penalty remains to be assigned by the Court consistent with its sound discretion.

*Valley Steel,* 14 CIT at 17, 729 F. Supp. at 1359 (footnote omitted). Furthermore, the Court noted the "[p]enalties under 19 U.S.C. § 1592 serve a remedial purpose and provide a reasonable remedy" that is "comparable to a form of liquidated damages, the type of sanction for which *Halper* expressed an approval." *Id.* (citations omitted). In *Dantzler Lumber* the Court adopted the approach in *Valley Steel* holding that § 1592 has remedial, not punitive, effects and "in general, there is no double jeopardy in the civil enforcement of a remedial sanction." 16 CIT at 1056, 810 F. Supp. at 1283 (quoting *Valley Steel,* 14 CIT at 16, 729 F. Supp. at 1358) (internal quotations omitted).

This Court upholds and adopts the reasoning of both *Valley Steel* and *Dantzler Lumber* on the issue of double jeopardy and § 1592 and holds that this action to recover civil penalties under 19 U.S.C. § 1592 does not violate the Double Jeopardy Clause of the United States Constitution. *See Valley Steel,* 14 CIT at 16–18, 729 F. Supp. at 1358–60; *Dantzler Lumber,* 16 CIT at 1056–57, 810 F. Supp. at 1283–84; *see also United States v. Murray,* 5 CIT 102, 105–07, 561 F. Supp. 448, 452–54 (1983). Defendant's motion for summary judgment seeking dismissal on the grounds the complaint exposes defendant to double jeopardy is denied. Plaintiff's motion for partial summary judgment to dismiss the affirmative defense of double jeopardy is granted.

5. Excessive Fines:

Defendant contends that because all duties were paid on the ninety-eight entries in issue and no damages or losses were suffered by plaintiff "the entire amount sought by Plaintiff in this case is excessive" and violates the Eighth Amendment to the United States Constitution.[8] Def.'s Br. at 30. Plaintiff argues the Excessive Fines Clause is not applicable to 19 U.S.C. § 1592 because the statute serves a remedial purpose. Pl.'s Opp'n at 33 (citing *Austin v. United States, 113* S. Ct. 2801, 2806 (1993)).

The Court has considered and rejected arguments similar to those raised by defendant. This Court will not act on an argument sounding in

---

[8] The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

the Eighth Amendment before a penalty is even assessed. As previously stated by the Court:

> [N]o fine has yet been assessed, and the trial has not even begun. For the Court, at this stage, to suggest what a proper fine might be would be wholly inappropriate and would constitute an unconstitutional advisory opinion. The amount of the penalty to be assessed is within the sound discretion of the Court, but only after a violation of section 592 has been proven. * * * If and when a penalty is assessed, then the issue of whether the penalty is excessive may be raised.

*United States v. Valley Steel Prods. Co.,* 15 CIT 268, 271, 765 F. Supp. 752, 754 (1991). The Court follows the analysis in *Valley Steel* and declines to rule on the propriety of the *proposed* penalty. For all of the foregoing reasons, defendant's motion for summary judgment based on a violation of the Eighth Amendment is denied.

B. *Plaintiffs Motion for Partial Summary Judgment Based on Collateral Estoppel:*

Plaintiff argues defendant "is bound by its admission of the facts which form the basis for its criminal conviction," and that defendant's "conviction clearly establishes all the elements of a fraudulent violation of 19 U.S.C. § 1592." Pl.'s Br. at 6 (citing *United States v. Dantzler Lumber & Export Co.,* 16 CIT 1050, 810 F. Supp. 1277 (1992) and *United States v. Daewoo Int'l (America) Corp.,* 12 CIT 889, 696 F. Supp. 1534 (1988)). Therefore, plaintiff asserts, defendant is collaterally estopped from denying a violation of § 1592 in these proceedings. Plaintiff claims defendant introduced foreign-made bolts into the United States by knowingly failing to inform Commerce of defendant's intent to later remove the country of origin markings. Pl.'s Br. at 6 (citing *United States v. Ziegler Bolts & Parts Company,* No. 5:89–CR0064 (N.D. Ohio Mar. 6, 1989) (information) at 2–3, *reprinted in* Pl.'s Opp'n App. at 88–89; *United States v. Ziegler Bolts & Parts Company* No. 5:89–CR0064 (N.D. Ohio Mar. 6, 1989) (plea agreement) at 1, *reprinted in,* Pl.'s Opp'n App. at 84). Plaintiff finds it "inconceivable" that defendant was unaware Customs would not have allowed the importation of the fasteners if the agency knew the defendant intended to remove the country-of-origin markings. This failure by defendant to disclose to Commerce its intent to remove the country-of-origin markings is material, plaintiffs argue, "because it led Commerce to allow the bolts to be imported into the United States." Pl.'s Br. at 7 n.5 (citing *Daewoo Int'l,* 12 CIT at 894–96, 696 F. Supp. at 1539–40). Plaintiff further contends defendant had the requisite intent to remove the country of origin marks "at the time of each importation." *Id. at* 7 (citing *United States v. Brown,* 404 F. Supp. 968, 970–71 (S.D.N.Y. 1975), *aff'd, 538* F.2d 315 (2nd Cir. 1976)).

Defendant challenges plaintiff's cross-motion for partial summary judgment by claiming plaintiff has "utterly failed to carry its burden" of proof in establishing the lack of a triable issue. Def.'s Opp'n at 2 (citing

*United States v. Joan & David Helpern Co.,* 9 CIT 275, 277, 611 F. Supp. 985, 988 (1985); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed. Cir. 1987)). Defendant claims plaintiff has shown no correlation between the facts of the criminal case and the allegations in the complaint in the present case: "None of the 98 specifically identified entries set forth [in the complaint] * * * are referenced or identified in any way in any of the papers filed in the criminal case." *Id.* at 3. Defendant finds the lack of any precise reference to specific entries in the documents filed in the criminal case renders it "impossible to say from merely examining the papers filed in the criminal case whether any of the 98 entries in issue in this case were meant to be included in the civil case." *Id.* (footnote omitted). Defendant contends plaintiff's failure to support its contention with case law that "a nonspecific or ambiguous set of criminal papers were used to establish collateral estoppel of fact in a subsequent civil proceeding" underscores the lack of a sufficient basis for plaintiff's motion for partial summary judgment. *Id.* at 3–4. Furthermore, defendant argues the criminal matter not only concerns a different kind of fasteners than the civil complaint, but there is also a gap in the time period covered by the criminal plea and the civil complaint. *Id.* at 4–5. These differences and others, defendant concludes, demonstrate that the "documents filed in the criminal case cannot be definitely correlated on their face in any way with the 98 direct import entries which are in issue in *this* [civil] case." *Id.* at 6.

The doctrine of collateral estoppel permits issues that were actually determined by a court of competent jurisdiction to be treated as conclusive in a subsequent suit involving the parties to the prior litigation. *Cabot Corp. v. United States,* 12 CIT 664, 670, 694 F. Supp. 949, 953–54 (1988) (citation omitted). A prior criminal conviction, whether by jury verdict or by guilty plea, generally can be used by the government to estop a defendant from denying civil liability in a later proceeding. *Daewoo Int'l,* 12 CIT at 893, 696 F. Supp. at 1538 (citation omitted). A necessary step in advancing a collateral estoppel argument, however, is a showing that the issue under dispute was litigated in the earlier proceeding. Here, there is no reference in the information or the plea agreement to the ninety-eight specific entries at issue in the civil complaint. There is simply no means by which defendant's liability as to those ninety-eight entries can be precluded from consideration in this civil action when the ninety-eight entries were not a part of the criminal information or plea agreement. Plaintiff's motion for partial summary judgment on the issue of defendant's liability on the grounds of collateral estoppel is denied.

## C. *Defendant's Motion to Strike:*

Defendant moves for an order striking or excluding new evidence and new arguments raised in plaintiff's reply brief and in plaintiff's supplemental appendix. Defendant claims plaintiff is seeking an unfair and improper advantage by including new evidence and advancing new

arguments when defendant has "no further opportunity or right to respond to the new evidence and/or new arguments." Defendant's Memorandum in Support of Motion to Strike at 2 (Def.'s Mem.). Defendant cites several cases for the proposition that "supplemental affidavits submitted in support of summary judgments motions may not and should not be considered." Def's Mem. at 3 (citing *Useden v. Acker,* 947 F.2d 1563,1571–72 (11th Cir. 1991), *cert. denied,* 113 S. Ct. 2927 (1993) (other citations omitted)). In addition, defendant claims plaintiff unfairly included improper and unauthenticated documents in its reply brief, appendix, and supplemental appendix and that such documents "should be given no consideration by this Court." *Id.* at 2.

Plaintiff responds first that its reply papers "raised no new arguments but simply replied to defendant's arguments" and that plaintiff "has the right to respond to the new issues and arguments raised in defendant's opposition." Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike at 2–3 (Pl.'s Mem.). Second, plaintiff distinguishes defendant's cited cases arguing those cases concerned affidavits filed on the eve of the hearings unlike the documents at issue here, which were "timely filed in accordance with the Court's scheduling order." Pl.'s Mem. at 4. The issue here, plaintiff asserts, is not one of timeliness, but whether plaintiff's reply was "properly limited to rebutting the matters raised in the defendant's opposition." *Id.* at 5. Finally, plaintiff rejects defendant's assertion that plaintiff's documents are unauthenticated and cites U.S. CIT R. 56(f), which permits supporting and opposing affidavits made on personal knowledge and averring facts admissible in evidence.

After reviewing the parties' papers and contentions, the Court holds plaintiff's reply brief and supplemental appendix properly respond to the issues and arguments raised in defendant's papers. Defendant's motion to strike is denied.

### CONCLUSION

The Court denies defendant's motion for summary judgment because there appear to be material questions of fact as to whether the statute of limitations has expired, which facts are better left for determination at trial. The Court denies defendant's motion for summary judgment to dismiss the complaint for failure to set forth allegations of fraud with sufficient particularity. The Court holds defendant was not denied substantive or procedural due process of law administratively by Customs and accordingly denies defendant's application to dismiss the complaint. The Court grants plaintiff's motion for partial summary judgment to the extent that defendant's affirmative defense pertaining to its asserted denial of substantive and procedural due process is dismissed. The Court holds the prosecution of the complaint is not barred by the prohibition against double jeopardy and denies defendant's application to dismiss the complaint. The Court grants plaintiff's motion for partial summary judgment to the extent that defendant's affirmative defense

of double jeopardy is dismissed. The Court denies defendant's motion for summary judgment based on a violation of the Eighth Amendment to the United States Constitution. The Court denies defendant's application to strike the challenged material in plaintiff's reply brief and supplemental appendix.

The Court denies plaintiff's motion for partial summary judgment on the grounds of collateral estoppel pertaining to the issue of defendant's liability.